# IN THE COURT OF APPEALS OF IOWA

No. 14-1146
Filed September 17, 2014

IN THE INTEREST OF J.S.,
    Minor Child,

M.S., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.


A mother appeals the termination of her parental rights to her child. **AFFIRMED.**


Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

A mother appeals the termination of her parental rights to her child, J.S.[1] She asserts the juvenile court erred in terminating her rights because the State failed to prove by clear and convincing evidence the statutory grounds for termination under Iowa Code section 232.116(1)(d), (e), (g), and (h) (2013). She also claims it is in the child's best interest that her rights not be terminated and that the child has a bond with her, establishing an exception to termination. For the reasons stated, we affirm the termination order of the juvenile court.

## I. Background Facts and Proceedings.

J.S., born in May 2013, came to the attention of the department of human services (DHS) after mother left him with friends for several days without checking in on the child or providing basic necessities. DHS determined the friends were inappropriate caretakers and obtained a temporary removal order to place J.S. in foster care. The mother, at that time, was in jail on theft charges. The mother's parental rights to her two older children had previously been terminated by the State of Minnesota in 2010 and 2013[2] due to medical neglect and failure to maintain contact. At the subsequent removal hearing, the mother did not appear, though she had been released from jail. The mother did appear

---

[1] The parental rights of the unknown putative father were also terminated as part of this proceeding. Paternity testing of two individuals during the course of this case established the two men the mother named as the father were not related to the child. As a result, the identity of the father is unknown at this time, and no appeal has been filed on behalf of any putative father.

[2] J.S. was born just days before the mother's parental rights were terminated to her second child.

at the adjudicatory hearing in August 2013, though she was at that time back in jail on a new theft charge and a probation violation.

Once the mother was released from jail, having resolved her criminal matters, services were provided, including: parenting classes; drug screens; child protective assessment services; foster care; individual therapy; NA/AA meetings; sponsor; domestic abuse classes; visitation; family safety, risk, and permanency services; pre-removal conference; family team meetings; substance abuse evaluations; substance abuse treatment; paternity testing; attachment assessment; early access services; regional child protection center; probation supervision; and housing referrals.

The mother failed to provide a drug screen when requested and failed a second drug screen, which came back positive for THC and cocaine. By the first day of the termination hearing, the mother had attended only twenty-one of fifty-nine scheduled supervised visits. The visits were offered three times a week. She was provided transportation assistance, and the visits were moved to a location that was within walking distance for her, but she still failed to attend consistently the visitation. Between the first and second day of the termination hearing,[3] the mother attended only two of eight scheduled visitations. She had not progressed to unsupervised or overnight visits during this case.

At the time of the termination hearing, she had only recently moved out of the home of the friend whom DHS had determined was inappropriate to be around J.S. The mother admitted at the termination trial that her prior home was

---

[3] The termination hearing took place over two days on March 7 and April 3, 2014.

not a safe place for J.S. She had not sought DHS approval for visitations to take place in her new home. She was employed for only about two months during the pendency of the case and was unemployed at the time of the termination hearing. Despite her admitted use of marijuana, she failed to obtain a substance abuse evaluation. She also failed to obtain a mental health evaluation or attend therapy as requested, asserting instead that she did not believe she needed therapy.

The court issued its termination order on June 30, 2014, finding the State had proved the grounds to terminate the mother's rights under Iowa Code section 232.116(1)(d), (e), (g), and (h). It concluded the best interests of J.S. would be served by terminating the mother's parental rights and no exception applied to prevent termination. The mother now appeals.

## II. Scope and Standard of Review.

Our review of an action to terminate a party's parental rights is de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual findings of the juvenile court, especially its determinations of credibility, but we are not bound by them. *Id.* Our primary consideration is the best interests of the child. *In re A.B.*, 615 N.W.2d 764, 776 (Iowa 2012).

## III. Statutory Grounds for Termination.

The mother first challenges the statutory grounds used by the juvenile court to terminate her parental rights. Where there is clear and convincing evidence of the statutory grounds for termination, we will uphold the juvenile court's decision. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is

clear and convincing when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate on one of the paragraphs to affirm. *In re J.A.D.-F.*, 776 N.W.2d 879, 884 (Iowa Ct. App. 2009). Here, we focus on the evidence supporting the court's termination of the mother's parental rights under Iowa Code section 232.116(1)(h).

To terminate parental rights under Iowa Code section 232.116(1)(h), the State must show by clear and convincing evidence:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother concedes that the State proved subparagraphs (1), (2), and (3). However, she contends the State failed to meet its burden to prove J.S. cannot be returned to her custody.

The evidence at trial established the mother had failed to attend more than half of the scheduled supervised visits with J.S. since his removal. Due to the infrequency of the visits, the mother had not been able to progress to unsupervised or overnight visits. For the majority of the proceedings, she lived in a home that even she admitted was not safe for J.S. She only recently moved to a different home, though she failed to ask DHS to determine whether the new

home was safe for J.S. She was unemployed, not paying rent at her new home, and continued to associate with individuals DHS had determined were inappropriate for J.S. She had failed to seek a substance abuse or mental health evaluation and failed to attend individual therapy. We conclude the State established by clear and convincing evidence that J.S. could not be returned to his mother's custody at the time of the termination hearing.

## IV. Best Interests and Exception.

Next, the mother contends it was not in J.S.'s best interest for her rights to be terminated under section 232.116(2) and that J.S. has a bond with her that provides an exception to the termination under section 232.116(3)(c). In evaluating J.S.'s best interest, we consider the child's safety, the placement that will best further his long-term nurturing and growth, and the physical, mental, and emotional condition and needs of the child. Iowa Code § 232.116(2). The child's safety at this time mandates that he remain in the foster family as the mother is not capable of safely caring for J.S. While she has moved out of the unsafe home, she has failed to request DHS evaluate her current home to ensure it is appropriate for J.S. She has failed to attend the required substance abuse and mental health evaluations and has failed to attend consistently the supervised visits she has been afforded.

We also consider whether the child has been integrated into the foster family, whether he identifies with the foster family, and whether the foster family is willing to integrate permanently the child into their family. Iowa Code § 232.116(2)(b). J.S. has thrived in the foster family and is meeting all

developmental milestones. He identifies the foster mother as his mother and seeks her out for comfort and to satisfy his needs. The foster family is willing to adopt J.S. We conclude it is in J.S.'s best interests to terminate the mother's parental rights. At his young age, he deserves permanency and stability.

In support of her claim that the parent-child bond should prevent termination, the mother points to her ability to provide care for J.S., such as feeding and diaper changing, during her supervised visits and that J.S. smiles at her now when she sees him at the visits. This evidence falls short of showing the termination would be detrimental to J.S. due to the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3). We find, as did the juvenile court, that no legal exception applies that would argue against termination.

We therefore affirm the termination of the mother's parental rights with respect to J.S.

**AFFIRMED.**